UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TIMOTHY FLETCHER,

                         Plaintiff,

     -v.-                                                    9:07-CV-0707
                                                             (GLS)(GHL)
GLENN GOORD, Commissioner of NYS DOCS;
DAINE HOLFORD, Employee of NYS DOCS
Central Office of Sentence and Review;
ANTHONY J. ANNUCCI, Deputy Commissioner
of NYS DOCS; and ROBERT DENNISON,
Commissioner of NYS Division of Parole,

                         Defendants.

_____

APPEARANCES:                                        OF COUNSEL:

TIMOTHY FLETCHER
   Plaintiff, *Pro Se*
230 East 123rd Street, Apt. 2604
New York, NY 10035

HON. ANDREW M. CUOMO                         GERALD J. ROCK, ESQ.
Attorney General for the State of New York
   Counsel for Defendants
The Capitol
New York, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

This *pro se* prisoner civil rights action, filed pursuant to 42 U.S.C. § 1983, has been

referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, United States

District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of

Practice for this Court.  Generally, Timothy Fletcher ("Plaintiff") alleges that the Commissioner

of the New York State Division of Parole ("Division of Parole") and three employees of the New York State Department of Correctional Services ("DOCS") violated Plaintiff's rights under the Fourth, Eighth and Fourteenth Amendments by (1) miscalculating his aggregate sentence for separate convictions, on or about February 27, 1990, (2) miscalculating his parole eligibility date on February 12, 2003, and/or retroactively modifying that parole eligibility date on August 31, 2004, in an incorrect or improper fashion, (3) causing these errors by failing to adequately train and supervise their subordinates, and/or (4) failing to correct these errors after learning of them. (Dkt. No. 1, ¶¶ 12, 20-33 & Exs. D-J [Plf.'s Compl.].)

Currently pending is Defendants' motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. No. 42.)  Plaintiff has not opposed the motion, despite having been granted an extension of the deadline by which he had to do so.  (Dkt. No. 44.)  Under the circumstances, I recommend that Defendants' motion to dismiss be granted.

## I.       RELEVANT PROCEDURAL BACKGROUND

This action was commenced in the Southern District of New York on January 11, 2006. (Dkt. No. 1.)  After being served, all Defendants filed motions to dismiss the Complaint on May 11, 2006, and June 29, 2006.  (Dkt. Nos. 16 and 23.)  The Southern District of New York granted in part and denied in part these motions on December 21, 2006.  (Dkt. Nos. 34, 37.)  Specifically, the Southern District granted the motions to the extent they requested the dismissal of Plaintiff's claims against the City of New York and various of its employees ("the City Defendants"), and denied the motions *without prejudice* to the extent they requested the dismissal of Plaintiff's claims against the State of New York and various of its employees ("the State Defendants" or "Defendants").  (*Id.*)  Because the actions complained of with respect to the State Defendants

2

occurred in the Northern District of New York, the Southern District transferred Plaintiff's claims against the State Defendants to this District. (*Id.*)

On July 5, 2007, the case was transferred to this Court. On August 9, 2007, Defendants filed the motion to dismiss that is currently pending before the Court. (Dkt. No. 42.) The original deadline by which Plaintiff had to respond to Defendants' motion was August 31, 2007. (*Id.*) Furthermore, Defendants' motion papers included a detailed notification of the consequences of failing to respond to a motion to dismiss. (Dkt. No. 42, Part 1, at 1.) However, Plaintiff filed no such response. On September 17, 2007, the Court *sua sponte* extended this deadline to October 17, 2007. (Dkt. No. 44.) However, again, Plaintiff filed no such response. Nor has Plaintiff, during the four-and-a-half-months that have passed since October 17, 2007, attempted to file such a response.

## II.    SUMMARY OF PLAINTIFF'S CLAIMS

In her fine Report-Recommendation with regard to Defendants' previous motions to dismiss, United States Magistrate Judge Lisa Margaret Smith, of the Southern District of New York, accurately summarized the claims asserted in Plaintiff's Complaint as follows:

> Plaintiff's Complaint against both the City Defendants and the State Defendants is best divided into two discrete sets of claims. First, the Plaintiff maintains that his constitutional rights were violated when the Head Clerk at Elmira Prison, subsequently identified as Carol Pelrah, 'determined [that] the plaintiff had been improperly sentenced by the court in 1987 to concurrent terms[,] and[] unlawfully modified the terms of [his sentence] and his original maximum expiration date of 1988-06-22 to 1990-03-10, so that the terms ran consecutively instead of concurrently.' See Comp. at ¶21. In conjunction with this first claim, Plaintiff maintains that he was not credited for the full 337 days of jail time credit he served during his period of incarceration at Rikers Island. See Comp. at ¶23.

Second, and distinct from the first set of allegations, Plaintiff argues that his parole eligibility date for his 1990 prison weapons and contraband conviction was improperly calculated to be in March of 2002 rather than in October of 1998. See Comp. at ¶26. Plaintiff alleges that his parole eligibility date was retroactively modified in August of 2004 from March 27, 2002, to October 3, 1998. See id. Plaintiff argues that this retroactive correction was applied to him in a different manner than it was to other inmates whose parole eligibility dates were also miscalculated, giving rise to an Eighth Amendment deliberate indifference claim, a Fourteenth Amendment disparate treatment claim, a Fourteenth Amendment procedural due process claim, and a Fourth Amendment false imprisonment claim. See Comp. at ¶12 (identifying Fourth, Eighth and Fourteenth Amendment violations).

The Plaintiff does not clearly articulate which claims he is asserting against the City Defendants, the State Defendants, or against both classes of defendants. Considering the tenor of Plaintiff's claims, I conclude, and respectfully recommend that Your Honor should conclude, (1) that the Plaintiff's allegations addressing the classification of his 1983 and 1987 sentences and the calculation and application of his 337 days of served jail time credit should be construed against both the City Defendants and the State Defendants, and (2) that the Plaintiff's latter allegations involving the proper establishment of his parole eligibility date should be construed against only the State Defendants as he was only in the custody of the New York State Department of Corrections at the time of this alleged constitutional violation.

(Dkt. Nos. 34, 37 [attaching *Fletcher v. Goord*, 06-CV-0250, Report-Recommendation, at 8-10 (S.D.N.Y. filed Nov. 29, 2006) (Smith, M.J.), *adopted by* Order (S.D.N.Y. filed Dec. 21, 2006) (Brieant, J.)].)  I note that, during his objections to Magistrate Judge Smith's Report-Recommendation, Plaintiff did not dispute this interpretation of his claims.  (*See* Dkt. No. 36.)

Finally, I note that, in construing Plaintiff's claims, I have afforded Plaintiff's Complaint the liberal construction that all pleadings must be afforded, under Fed. R. Civ. P. 8.  *See* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice.").  It is true that, *generally*, the pleadings of *pro se* litigants are construed with even more liberality than is

4

required under Fed. R. Civ. P. 8.[1]  The rationale for extending this special liberality to the

pleadings of *pro se* litigants is that, generally, *pro se* litigants are unfamiliar with legal

terminology and the litigation process.  For this reason, "[t]here are circumstances where an

overly litigious inmate, who is quite familiar with the legal system and with pleading

requirements, may not be afforded [the] special [liberality or] solicitude" that is normally

afforded *pro se* litigants.[2]  For example, on several occasions, the Second Circuit has, quite

appropriately in my opinion, diminished the special liberality normally afforded to a *pro se*

litigant's pleadings, and/or indicated the acceptability of such a diminishment, due to the *pro se*

litigant's extraordinary litigation experience.[3]  (In addition to being unnecessary, I believe that an

extension of special liberality to the pleadings of extraordinarily experienced *pro se* litigants

would tilt the scales of justice unfairly in favor of the *pro se* litigant and against his opponents.)[4]

---

[1]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) *(*"[C]ourts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest.") [internal quotation marks and citation omitted].

[2]     *Koehl v. Greene*, 06-CV-0478, 2007 WL 2846905, at *3 & n.17 (N.D.N.Y. Sept. 26, 2007) (Kahn, J., adopting Report-Recommendation) [citations omitted].

[3]      *See, e.g.*, *Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (unpublished opinion), *aff'g*, 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.), *adopting*, Report-Recommendation, at 1, n.1 (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson*, 201 F.3d 431, at *2 (2d Cir. 1999) (unpublished opinion), *aff'g*, 97-CV-1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting*, Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.); *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994); *see also Raitport v. Chem. Bank*, 74 F.R.D. 128, 133 (S.D.N.Y. 1977) [citing *Ackert v. Bryan*, No. 27240 (2d Cir. June 21, 1963) (Kaufman, J., concurring).

[4]     *Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *7, n.34 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Edwards*, 2007 WL 748442, at *2; *Sledge*, 2007 WL 951447, at *3; *see also Hussein*, 1991 WL 221033, at *4 (concluding that experienced *pro se* litigant should no longer be afforded special leniency because continuing to afford him such leniency would be unfair to "numerous attorneys," whose

Here, a review of on-line databases, including the Federal Judiciary's Public Access to

Court Electronic Records ("PACER") System, reveals Plaintiff possesses such extraordinary

litigation experience, having filed some *twenty-four* (24) other federal or state court actions or

appeals.[5]   Therefore, I do not afford, and I recommend that the Court not afford, Plaintiff's

Complaint the sort of *special* liberal construction normally afforded to the pleadings of *pro se*

---

time and energy had already been consumed by plaintiff); Jessica Case, "Pro se Litigants at the
Summary Judgment Stage: Is Ignorance of the Law an Excuse?" 90 *Ky. L.J.* 701, 735-740
(Spring 2001) (discussing how extending special leniency to *pro se* litigants in some
circumstances "distorts the adversarial system and the role of trial judges") [citing cases]; Julie
M. Bradlow, "Procedural Due Process Rights of *Pro se* Civil Litigants," 55 *U. Chi. L. Rev.* 659,
672 (Spring 1988) (discussing how "extending too much procedural leniency to a *pro se* litigant
risks undermining the impartial role of the judge in the adversary system") [citations omitted].

[5]          *See Fletcher v. Batista*, 91-CV-0885 (N.D.N.Y.) (prisoner civil rights action);
*Fletcher v. Vanhorn*, 93-CV-0657 (W.D.N.Y.) (prisoner civil rights action); *Fletcher v. Mann*,
96-CV-0164 (N.D.N.Y.) (habeas corpus proceeding); *Fletcher v. Mann*, 96-CV-0501 (S.D.N.Y.)
(habeas corpus proceeding); *Fletcher v. Dennison*, 05-CV-1383 (N.D.N.Y.) (habeas corpus
proceeding); *Fletcher v. Walmart Stores, Inc.*, 05-CV-1859 (S.D.N.Y.) (prisoner civil rights
action); *Fletcher v. Vanhorn*, No. 96-2544 (2d Cir.) (prisoner civil rights action); *Fletcher v.
Mann*, No. 97-2137 (2d Cir.) (habeas corpus proceeding); *Fletcher v. Walmart Stores, Inc.*, No.
06-4585 (2d Cir.) (prisoner civil rights action); *Fletcher v. Mann*, 526 U.S. 1029 (1999) (habeas
corpus proceeding); *Fletcher v. Artuz*, Index No. 003358/1992 (N.Y.S. Sup. Ct., Dutchess
County) (Article 78 proceeding); *Fletcher v. Artuz*, Index No. 005111/1992 (N.Y.S. Sup. Ct.,
Dutchess County) (Article 78 proceeding); *Fletcher v. Artuz*, Index No. 005421/1992 (N.Y.S.
Sup. Ct., Dutchess County) (Article 78 proceeding); *Fletcher v. Portuondo*, Index No.
001859/1995 (N.Y.S. Sup. Ct., Dutchess County) (Article 78 proceeding); *Fletcher v.
Portuondo*, Index No. 001675/1996 (N.Y.S. Sup. Ct., Ulster County) (habeas corpus
proceeding); *Fletcher v. Bigger*, Index No. 008378/2002 (N.Y.S. Sup. Ct., Orange County)
(habeas corpus proceeding); *Fletcher v. Goord*, Index. No. 006580/2004 (N.Y.S. Sup. Ct.,
Albany County) (Article 78 proceeding); *Fletcher v. Coughlin*, 556 N.Y.S.2d 411 (N.Y.S. App.
Div., 3d Dept., 1990) (Article 78 proceeding); *Fletcher v. Selsky*, 606 N.Y.S.2d 396 (N.Y.S.
App. Div., 3d Dept., 1993) (Article 78 proceeding); *Fletcher v. Murphy*, 670 N.Y.S.2d 809
(N.Y.S. App. Div., 3d Dept., 1998) (Article 78 proceeding); *Fletcher v. Travis*, 796 N.Y.S.2d
272 (N.Y.S. App. Div., 4th Dept., 2005) (habeas corpus proceeding); *Fletcher v. Goord*, 826
N.Y.S.2d 807 (N.Y.S. App. Div., 3d Dept., 2006) (Article 78 proceeding); *Fletcher v. Selsky*,
612 N.Y.S.2d 108 (N.Y. 1994) (Article 78 proceeding); *Fletcher v. Travis*, 803 N.Y.S.2d 30
(N.Y. 2005) (habeas corpus proceeding).

litigants.  Nor do I believe such a special liberal construction would make any difference to the outcome of Defendants' motion, given the nature of Plaintiff's claims.

## III.    RECENTLY CLARIFIED LEGAL STANDARD FOR MOTIONS TO DISMISS

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2);[6] or (2) a challenge to the legal cognizability of the claim.[7]

---

[6]      *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[7]      *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Such a statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[8]  The purpose of this rule is to "facilitate a proper decision on the merits."[9]  A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[10]

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading

---

under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-02 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

[8]      *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 [1957]); *see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[9]      *See Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48).

[10]      *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g.*, *Photopaint Tech., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

requirements that exceed this liberal requirement.[11]   However, it is well established that even this

liberal notice pleading standard "has its limits."[12]   As a result, several Supreme Court and Second

Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading

standard.[13]

    Most notably, in the recent decision of *Bell Atl. Corp. v. Twombly*, the Supreme Court, in

reversing an appellate decision holding that a complaint had stated a claim upon which relief

could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41,

45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief."  127 S. Ct. 1955, 1968-69 (2007).[14]   Rather than turning on the

---

[11]       *See*, *e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (characterizing Fed. R. Civ. P. 8[a][2]'s pleading standard as "simplified").

[12]       2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

[13]       *See*, *e.g.*, *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-74 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord*, *Dura Pharm.*, 125 S. Ct. at 1634-35, *Christopher v. Harbury*, 536 U.S. 403, 416-22 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-35 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-09 (2d Cir. 2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See*, *e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[14]       The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately

9

*conceivability* of an actionable claim, the Court clarified, the Rule 8 standard turns on the "plausibility" of an actionable claim. *Id*. at 1965-74.  More specifically, the Court held that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id*. at 1965 [citations omitted].  What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id*.; *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is . . . requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") [emphasis in original].

Having said that, it should be emphasized that, "[i]n reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[15]  Moreover, it should be noted that "[t]his standard is applied with even greater force where the plaintiff alleges civil rights

---

stated, it may be supported by showing any set of facts consistent with the allegations in the complaint. . . .  *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly*, 127 S. Ct. at 1969.

[15]    *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

violations or where the complaint is submitted *pro se*."[16]  In other words, while all pleadings are to be construed liberally, *pro se* civil rights pleadings are generally to be construed with an *extra* degree of liberality.  Indeed, generally "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[17]  In addition, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[18]

However, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading.[19]  Moreover, when a plaintiff is

---

[16]     *Hernandez*, 18 F.3d at 136 [citation omitted]; *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

[17]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

[18]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

[19]     *Cagle v. Perry*, 04-CV-1151, 2007 WL 3124806, at *6, n.45 (N.D.N.Y. Oct. 24, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Savage v. Brue*, 05-CV-0857, 2007 WL 3047110, at *5, n.35 (N.D.N.Y. Oct. 18, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Koehl v. Greene*, 06-CV-0478, 2007 WL 2846905, at *3, n.13 (N.D.N.Y. Sept. 26, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *2, n.14 (N.D.N.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5, n.34 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons*, 05-CV-0904, 2007 WL 37404, at *4, n.30 (N.D.N.Y. Jan. 4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.*, 03-CV-0407, 2006 WL 2794415, at *5, n.18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J.,

proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."[20]  For example, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[21]

## IV.    DEFENDANTS' MOTION TO DISMISS

### A.    First Basis for Dismissal: Facial Merit of Defendants' Unopposed Motion

Under the Local Rules of Practice for this Court, Plaintiff has effectively "consented" to the granting of Defendants' motion to dismiss, since (1) the motion was properly filed, (2) Defendants have, through the motion, met their burden of demonstrating entitlement to the relief requested in the motion, and (3) Plaintiff has failed to file or serve any papers in opposition to Defendants' motion, nor has he shown good cause excusing that failure.  N.D.N.Y. L.R. 7.1(b)(3)

---

adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver*, 03-CV-0912, 2006 WL 2799417, at *4, n.16 (N.D.N.Y. Sept. 26, 2006)  (Kahn, J., adopting report-recommendation of Lowe, M.J.).

[20]       *Stinson v. Sheriff's Dep't of Sullivan County*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980); *accord*, *Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *6, n.27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz*, 2007 WL 2027912, at *2 (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F. Supp.2d 305, 307 (W.D.N.Y. 2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n.11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins*, 2007 WL 37404, at *4 (Kahn, J., adopting report-recommendation of Lowe, M.J.).

[21]       *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause be shown.").

I note that an inquiry into the second factor (i.e., whether a movant has met its "burden to demonstrate entitlement" to dismissal under Local Rule 7.1[b][3]) is a more limited endeavor than a review of a contested motion to dismiss.[22]  Specifically, under such an analysis, the movant's burden of persuasion is lightened such that, in order to succeed, his motion need only be "facially meritorious."[23]  Here, I find that Defendants have met their lightened burden on their unopposed motion given (1) defense counsel's accurate and thorough explanation of the procedural history of the case, (2) Defendants' cogent, and legally supported, legal arguments set forth in their memoranda of law, and (3) Defendants' attachment of a December 21, 2006 decision by the New York State Appellate Division, Third Department, in further support of their collateral estoppel argument.  (*See* Dkt. No. 42, Part 2 [Affirm. of Jeffrey P. Mans]; Dkt. No. 42, Parts 3-6 [Exs. A to D of Mans Affirm., attaching Defs.' Memo. of Law, Reply Memo. of Law,

---

[22]       *See*, *e.g.*, *Hernandez v. Nash*, 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at *7-8 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (finding that, before an unopposed motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12[b][6] may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious*") [emphasis added; citations omitted]; *Race Safe Sys. v. Indy Racing League*, 251 F. Supp.2d 1106, 1109-10 (N.D.N.Y. 2003) (Munson, J.) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12[b][2] and Local Rule 7.1[b][3]); *accord*, *Goros v. C.O.R.C.*, 03-CV-0407, 2006 WL 2794415, at *5, n.22 (N.D.N.Y. Sept. 26, 2006) (Sharpe, J., adopting Report-Recommendation by Lowe, M.J.).

[23]       *See*, *e.g.*, *Hernandez*, 2003 U.S. Dist. LEXIS 1625 at *8 (Sharpe, M.J.).

13

Suppl. Memo. of Law, and Suppl. Reply Memo. of Law]; Dkt. No. 42, Part 7 [Ex. E to Mans.

Affirm., attaching case of *Fletcher v. Goord*, 35 A.D.2d 1077 [3d Dept. 2006].)  I note that this

Court has, on numerous occasions, granted motions to dismiss based on a similar facial analysis

of a defendant's legal arguments (and a plaintiff's claims).[24]

### B.     Alternative Basis for Dismissal: Substantive Merit of Defendants' Motion

In the alternative, I recommend dismissal based on the sort of detailed scrutiny of

Defendants' legal arguments that would be appropriate on a *conteste*d motion to dismiss.

Defendants have moved for dismissal based on want of subject-matter jurisdiction under

Rule 12(b)(1), and failure to state a claim under Rule 12(b)(6).  More specifically, Defendants

assert the following four arguments in favor of dismissal: (1) Plaintiff's constitutional claim

arising from the first set of allegations described above (i.e., the modification of his original

maximum expiration date from June 22, 1988, to March 10, 1990, so that the terms of his

sentences ran consecutively instead of concurrently) is barred by the three-year statute of

limitations governing that claim; (2) Plaintiff's claims against Defendants arising from the second

set of allegations described above (i.e., the August 2004 retroactive modification of his parole

---

[24]     *See, e.g., Wilmer v. Torian*, 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Local Rule 7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers)*, adopted by* 96-CV-1269, 1997 U.S. Dist. LEXIS 16340, at *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord, Carter v. Superintendent Montello*, 95-CV-0989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F. Supp. 595 (N.D.N.Y. 1996) (Pooler, J.); *Munoz v. Coombe*, 95-CV-1191, 1996 U.S. Dist. LEXIS 15107, at *3 (N.D.N.Y. Aug. 21, 1996) (Hurd, M.J.), *adopted by* 95-CV-1191, 1996 U.S. Dist. LEXIS 15108, at *2 (N.D.N.Y. Oct. 11, 1996) (Pooler, J.) (rejecting plaintiff's objections, explaining that "Local Rule 7.1(b) permits the court to grant an unopposed motion"); *Owens v. Long*, 95-CV-0604, 1996 U.S. Dist. LEXIS 6520, at *2 (N.D.N.Y. March 11, 1996) (Hurd, M.J.), *adopted by* 95-CV-0604, 1996 U.S. Dist. LEXIS 4807 (N.D.N.Y. Apr. 10, 1996) (Pooler, J.).

eligibility date from March 27, 2002, to October 3, 1998) are barred by the doctrine of collateral

estoppel; (3) Plaintiff's claim that he was exposed to an additional felony conviction while

allegedly incarcerated beyond his correct release date fails to state a claim for which relief may

be granted; and (4) Plaintiff has not alleged facts plausibly suggesting that Defendants Goord,

Annucci and Dennison were personally involved in the constitutional violations alleged.  (Dkt.

No. 42, Part 3, at 6-11 [Ex. A to Mans Affirm., attaching Defs.' Memo. of Law]; Dkt. No. 42,

Part 4, at 3-5 [Ex. B of Mans Affirm., attaching Defs.' Reply Memo. of Law]; Dkt. No. 42, Part

5, at 3-5 [Ex. C to Mans Affirm., attaching Defs.' Suppl. Memo. of Law]; Dkt. No. 42, Part 6, at

3-5 [Ex. D to Mans Affirm., attaching Defs.' Reply Suppl. Memo. of Law].)

> **1.     Whether Plaintiff's Constitutional Claims Arising from the
> Modification of His Original Maximum Expiration Date from June
> 22, 1988, to March 10, 1990, Are Barred by the Applicable Three-
> Year Statute of Limitations**

The first set of Plaintiff's constitutional claims arise from the (allegedly) unlawful

modification of his original maximum expiration date from June 22, 1988, to March 10, 1990, so

that the terms of his sentences ran consecutively instead of concurrently as had been agreed upon

pursuant to a plea agreement in 1987.  (*See* Dkt. No. 1, ¶¶ 17-21 [Plf.'s Compl.].)  Defendants

argue that Plaintiff should have (with the exercise of due diligence) known of the existence of

these claims in February of 1990, when Plaintiff alleges this modification was made.  (Dkt. No.

42, Part 3, at 6-7 [Ex. A to Mans Affirm., attaching Defs.' Memo. of Law]; Dkt. No. 42, Part 4, at

3 [Ex. B to Mans Affirm., attaching Defs.' Reply Memo. of Law].)  Thus, they argue, the three-

year limitations period (which governs claims brought under 42 U.S.C. § 1983 in federal courts

sitting in New York State) expired in February of 1993.  (Dkt. No. 42, Part 3, at 6-7 [Ex. Ato

Mans Affirm., attaching Defs.' Memo. of Law]; Dkt. No. 42, Part 4, at 3 [Ex. B to Mans Affirm.,

attaching Defs.' Reply Memo. of Law].)

Even if Plaintiff had responded to Defendants' statute-of-limitations argument by arguing

that the running of the applicable three-year limitations period was (for some reason) tolled from

February of 1990 to August of 2004 under the so-called "discovery rule," I would reject

Plaintiff's argument.  In his Complaint, Plaintiff alleges facts plausibly suggesting that (1) the

initial error (regarding whether his 1983 sentence and his 1986 sentence were to run concurrently

or consecutively) was made on or about April 24, 1987 (when the "Head Clerk" at Elmira

Correctional Facility "unlawfully modified the terms of [his sentence]" so that the two sentences

ran consecutively rather than concurrently), and (2) the error manifested itself on or about

February 27, 1990 (when, soon after his sentencing for the offense of promoting prison

contraband by the County Court for Greene County, his "parole eligibility and release date were

. . .  recalculated" in such a way as to treat the two sentences as running consecutively rather than

concurrently).  (*See* Dkt. No. 1, ¶¶ 16-21 & Exs. C-D [Plf.'s Compl.].)  Thus, by Plaintiff's own

factual allegations, Plaintiff was placed on, at least, constructive notice of the miscalculation on

or soon after February 27, 1990.

Granted, Plaintiff appears to allege that the limitations period was tolled from February of

1990 to August of 2004 (when Defendant Holford allegedly acknowledged the miscalculation)

because of his "continuous research effort surrounding the circumstances of his conviction and

time computation . . . ."  (*Id*. at ¶ 20.)  The problem is that this allegation is wholly conclusory:

Plaintiff alleges no facts plausibly suggesting what efforts he diligently took to discover the

miscalculation after February of 1990, particularly during the period of 14 years that preceded his

16

filing of a grievance with regard to the miscalculation on June 1, 2004.  (*See generally* Dkt. No. 1 & Ex. F [Plf.'s Compl.].)[25]  Nor does he allege any facts plausibly suggesting why those efforts were unsuccessful.  (*Id*.)

Moreover, Plaintiff appears to argue that the date that triggered the running of the limitations period was the date in August of 2004 on which Defendant Holford allegedly acknowledged the miscalculation.  The problem with this argument is that a claim arising under Section 1983 accrues "when the plaintiff knows *or has reason to know* of the harm that he seeks to redress."  *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) [internal quotation marks and citation omitted; emphasis added], *accord*, *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) [internal quotation marks and citations omitted].  Even if a court of law had, in August of 2004, ruled that there had been a miscalculation, the date on which such a ruling was issued would not have been the date on which the limitations period had started running.  This is because "[t]he reference to 'knowledge of injury' [in the above-described standard] does not suggest that the statute [of limitations] does not begin to run until the claimant has received judicial verification that the defendants' acts were wrongful."[26]  Rather, the statute of limitations

---

[25]     I note that any argument that Plaintiff did not have reason to know of the miscalculation until August of 2004 would be belied by Plaintiff's own allegation that he filed a grievance regarding the miscalculation on June 1, 2004.  (Dkt. No. 1, Ex. F [Plf.'s Compl.].)  *See* Fed. R. Civ. P. 10(c) ("Statements in a pleading may be adopted by reference in a different part of the same pleading . . . .  A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

[26]     *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1995) [citations omitted], *accord*, *Shannon v. Selsky*, 04-CV-1939, 2005 U.S. Dist. LEXIS 3823, *13 (S.D.N.Y. March 10, 2005); *see also Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007) ("We have held . . . that a plaintiff's pursuit of a state remedy, such as an Article 78 proceeding, does not toll the statute of limitations for filing a claim pursuant to section 1983.") [citations omitted], *accord*, *Littman v. Senkowski*, 05-CV-1104, 2008 WL 420011, at *5 (N.D.N.Y. Feb. 11, 2008) (Kahn, J., adopting Report-

begins to run when, as stated above, the plaintiff knew *or had reason to know* of the harm in question.  Here, Plaintiff had reason to know of the harm in, or soon after, February of 1990, pursuant to his own factual allegations.

For these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's constitutional claims arising from the (allegedly) unlawful modification of his original maximum expiration date from June 22, 1988, to March 10, 1990, as barred by the applicable statute of limitations.

> **2.    Whether Plaintiff's Claims Against Defendants Arising from the August 2004 Retroactive Modification of His Parole Eligibility Date from March 27, 2002, to October 3, 1998, Are Barred by Collateral Estoppel**

The second set of Plaintiff's constitutional claims arise from the August 2004 retroactive modification of his parole eligibility date from March 27, 2002, to October 3, 1998.  (*See* Dkt. No. 1, ¶¶ 24-32 [Plf.'s Compl.].)  Defendants argue that these claims are barred by the doctrine of collateral estoppel.  (Dkt. No. 42, Part 5, at 3-5 [Ex. C to Mans Affirm., attaching Defs.' Suppl. Memo. of Law]; Dkt. No. 42, Part 6, at 3-5 [Ex. D to Mans Affirm., attaching Defs.' Reply Suppl. Memo. of Law].)

Defendants' argument is based on an Article 78 proceeding filed by Plaintiff at some point after August 31, 2004 (when he received an administrative determination acknowledging that there had been one or more errors in the calculation of his sentence.)  The case was *Fletcher v. Goord*, Index. No. 6580-04, filed in New York State Supreme Court, Albany County. Apparently, from my review of the New York State Unified Court System's website, Plaintiff

---

Recommendation by Lowe, M.J.); *LeBron v. Swaitek*, 05-CV-0172, 2007 U.S. Dist. LEXIS 81587, at *7, n.5 (N.D.N.Y. Nov. 2, 2007) (Sharpe, J.).

filed the case on or about December 1, 2004.  *See* New York State Unified Court System

www.courts.state.ny.us [last visited March 3, 2008].  On June 30, 2005, New York State

Supreme Court Justice George B. Ceresia, Jr., issued a written decision in that action.  (*See* Dkt.

No. 42, Part 5, at 8-15 [Ex. C to Mans Affirm., attaching Ex. 1 to Defs.' Suppl. Memo. of Law].)

On September 1, 2005, Justice Ceresia issued a written decision on Plaintiff's motion for

reconsideration with regard to the earlier decision.  (*See* Dkt. No. 42, Part 5, at 17-21 [Ex. C to

Mans Affirm., attaching Ex. 2 to Defs.' Suppl. Memo. of Law].)  On December 21, 2006, the

New York State Appellate Division, Third Department, issued a decision regarding Plaintiff's

appeal from Judge Ceresia's decision.  (*See* Dkt. No. 42, Part 7 [Ex. E to Mans Affirm.].)  After

carefully reading these three decisions, I must largely reject Defendants' collateral estoppel

argument, as it is currently presented.

　　　　"In New York, issue preclusion (or collateral estoppel) can be applied in a later case only

if (1) there has been a final determination on the merits of the issue sought to be precluded; (2)

the party against whom the issue preclusion is sought had a full and fair opportunity to contest

the decision involved as dispositive in the later controversy; and (3) the issue sought to be

precluded by the earlier suit is the same issue involved in the later action."  *Davis v. Halpern*,

813 F.2d 37, 39 (2d Cir. 1989) (collateral estoppel did not apply).  Stated another way,

"application of the doctrine of collateral estoppel to any given issue is carefully circumscribed by

two key requirements: (1) the issue in the subsequent suit must be identical to the issue actually

decided in the prior suit and (2) the determination of the issue in the prior suit must have been

necessary and essential to the judgment in that action."  *RX Data Corp. v. Dept of Social*

*Services*, 684 F.2d 192, 197 (2d Cir. 1982) (collateral estoppel did not apply).

My analysis of the issue presented in Plaintiff's Article 78 proceeding is hampered somewhat due to the fact that among the documents that Defendants have provided is *not* the Petition in the Article 78 proceeding.  This is unfortunate since the Petition would have enabled me to discern with more confidence the relief requested of, and the legal issue(s) presented to, the New York State Supreme Court.  In any event, the issue presented to the Supreme Court (with regard to DOCS's calculation of Plaintiff's sentence on February 12, 2003, and August 31, 2004), as articulated by Justice Ceresia, was whether Plaintiff was entitled to "some form of relief (including release)" due to DOCS's "belated[] modif[ication] [of] his parole eligibility date backwards from March 27, 2002 to October 10, 1998."  (*See* Dkt. No. 42, Part 5, at 11, 13 [Ex. C to Mans Affirm., attaching Ex. 1 to Defs.' Suppl. Memo. of Law].)  Justice Ceresia answered that question in the negative, reasoning that "inasmuch as the current parole eligibility date appears to be correctly determined, petitioner is not entitled to any further relief."  (*Id*.)

To blithely conclude from these two statements that Justice Ceresia ruled that Plaintiff is not entitled to money damages due to a miscalculation in his sentence would be to ignore the rather obvious disconnect between the issue articulated (i.e., whether Plaintiff was entitled to "some form of relief (including release)") and the rationale articulated for the decision (i.e., that Plaintiff was not entitled to any further adjustment to his parole eligibility date since his parole eligibility date had already been corrected on August 31, 2004).  Simply stated, I find nothing in Justice Ceresia's ruling saying that Plaintiff is not entitled to money damages due to the miscalculation.  The issue may have been presented to the New York State Supreme Court in a vague and obscure way (due to Plaintiff's request for "any other form of relief" in his Petition), but it does not appear to have been squarely decided by the Supreme Court, nor does it appear to

have been essential to the Court's decision.

Indeed, it is questionable to me that it was even possible for Plaintiff to have recovered money damages in the Article 78 proceeding that he brought in New York State Supreme Court. "Any restitution or damages granted to [a] petitioner [in an Article 78 proceeding] must be incidental to the primary relief sought by the petitioner, and must be such as he might otherwise recover on the same set of facts in a separate action or proceeding suable in the supreme court against the same body or officer in its or his official capacity." N.Y. C.P.L.R. § 7806. For the sake of brevity, I will set aside the issue of whether the money damages that Plaintiff is seeking in this action ($25,000,000) could be characterized as "incidental" to the relief sought in Plaintiff's Article 78 proceeding. The more important issue is whether Plaintiff could have "otherwise recover[ed] [such damages] on the same set of facts in a separate action or proceeding suable in the supreme court against the same body or officer in its or *his official capacity*." N.Y. C.P.L.R. § 7806 [emphasis added]. I doubt that Plaintiff could have done so. It appears that the Eleventh Amendment would have barred any such claim against a state official acting in his official capacity.[27]

My reading of the Third Department's decision only strengthens my conclusions about the issue decided by Justice Ceresia (with regard to DOCS's calculation of Plaintiff's sentence on February 12, 2003, and August 31, 2004), i.e., that it regarded only Plaintiff's release from prison, not his entitlement to money damages. The Third Department began its decision by

---

[27]    *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state.").

characterizing the purpose of Plaintiff's Article 78 proceeding as "to review a determination of

[DOCS] calculating the length of petitioner's term of imprisonment." (*See* Dkt. No. 42, Part 7

[Ex. E to Mans Affirm.].)  The Third Department went on to explain why Plaintiff's claims for an

earlier parole eligibility date had been resolved against him:

> It is apparent that petitioner's parole eligibility date was miscalculated
> by [DOCS] as March 27, 2002 rather than October 3, 1998 and that
> petitioner was, therefore, not paroled the third time until the later date.
> Nevertheless, petitioner's claims with respect to the calculation of his
> jail time credit and time served credit are moot as such credits are
> applied against the minimum period of incarceration . . . and he has
> already served more than 15 years.  In addition, as petitioner was
> released to parole supervision in March 2002 and was returned to
> prison in February 2003 after violating the terms of his parole, any
> claim with respect to his parole eligibility date is also moot . . . .
> Finally, . . . in August 2005, the Department corrected its error.  Thus,
> petitioner has been credited with all the time to which he is entitled.

(*Id*.)  The Third Department said nothing about money damages.

For this reason, the only relevant issues that appear to have been conclusively determined

in Plaintiff's Article 78 proceeding are (1) whether an error was made in the calculation of

Plaintiff's sentence on February 12, 2003, and (2) whether the error was subsequently corrected

*in its entirety*.  (Both questions appear to have been answered in the affirmative.)

Having said all of that, I agree that Plaintiff's claims against Defendants arising from the

second set of allegations described above (i.e., the August 2004 retroactive modification of his

parole eligibility date from March 27, 2002, to October 3, 1998) should be dismissed on another

ground: Plaintiff's failure to allege facts plausibly suggesting the sort of conduct on the part of

Defendants that would give rise to liability under the Constitution.

The crux of Plaintiff's various constitutional claims against Defendants arising from the

second set of allegations described above is that the miscalculation of his sentence on February

12, 2003 (which was not corrected until August 31, 2004) was the result of failures by

Defendants that were so egregious as to have constituted *deliberate indifference to Plaintiff's*

*plight*.  Under the circumstances alleged, this claim arises solely under the Eighth Amendment.

For example, although Plaintiff raises the specter of an equal protection claim under the

Fourteenth Amendment in Paragraphs 12 and 28 of his Complaint, he alleges no facts in support

of such a claim.[28]  Similarly, although Plaintiff raises the specter of a procedural due process

claim under the Fourteenth Amendment in Paragraphs 12 and 29 of his Complaint, he alleges no

facts in support of such a claim.[29]  For these reasons, again, Plaintiff's sole claim regarding the

---

[28]    More specifically, Plaintiff alleges conclusorily that the retroactive modification
of his parole eligibity date on August 31, 2004, "cause[d] plaintiff to be treated differently from
others similarly situated," apparently attempting to assert a Fourteenth Amendment equal
protection claim.  (Dkt. No. 1, ¶ 28 [Plf.'s Compl.].)  However, Plaintiff alleges absolutely no
facts plausibly suggesting the occurrence of such an equal protection violation.  For example,
Plaintiff does not allege (1) precisely how he was treated differently than similarly situated
individuals, (2) to what class of individuals he allegedly belonged, or (3) that he was treated
differently because of that class membership.  I note that prisoners do not comprise a protected
class for equal protection purposes.  *See Holley v. Carey*, 04-CV-2708, 2007 U.S. Dist. LEXIS
64699, *23 (E.D. Cal. Aug. 31, 2007) ("[N]either prisoners nor persons with mental handicaps
are a suspect class[ification] entitled to heightened scrutiny.") [citations omitted]; *Coleman v.
Martin*, 363 F. Supp.2d 894, 902 (E.D. Mich. 2005).

[29]    More specifically, Plaintiff alleges that his right to "procedural due process of law
under the [F]ourteenth Amendment" was violated "as a result of the NYS [DOCS'] failure to
supervise and adequately train its employees for proper administration of computing terms of
imprisonment and time credits based on time served . . . ."  (Dkt. No. 1, ¶ 29 [Plf.'s Compl.].)
First, Plaintiff alleges no specific *procedural deficiency* that *resulted* from the alleged failure to
supervise and train (e.g., the failure to afford him some sort of hearing on his complaint). As a
result, this claim fails.  Second, to the extent that Plaintiff is alleging that due process rights were
violated because his "parole eligibility date" was improperly calculated, he has failed to state a
claim for the additional reason that "prisoners in New York State have no [protected] liberty
interest in parole."  *Larocco v. N.Y.S. Div. of Parole*, 05-CV-1602, 2006 U.S. Dist. LEXIS
28918, at *6-7 (N.D.N.Y. May 12, 2006) (McAvoy, J.) [internal quotation marks and citations
omitted], *accord*, *Bottom v. Pataki*, 03-CV-0835, 2006 U.S. Dist. LEXIS 55046, at *15-19

second set of allegations described above is a deliberate indifference claim under the Eighth

Amendment.

The legal standard governing Plaintiff's Eighth Amendment claim alleging imprisonment

beyond the expiration of an inmate's sentence is as follows:

> To establish § 1983 liability in this context, a plaintiff must first
> demonstrate that a prison official had knowledge of the prisoner's
> problem and thus of the risk that unwarranted punishment was being,
> or would be, inflicted.  Second, the plaintiff must show that the official
> either failed to act or took only ineffectual action under circumstances
> indicating that his or her response to the problem was a product of
> deliberate indifference to the prisoner's plight.  Finally, the plaintiff
> must demonstrate a causal connection between the official's response
> to the problem and the infliction of the unjustified detention.

*Sample v. Decks*, 885 F.2d 1099, 1110 (3d Cir. 1989), *accord*, *Calhoun v. N.Y.S. Div. of Parole*

*Off.*, 999 F.2d 647, 654 (2d Cir. 1993) (citing *Sample v. Decks* for correct legal standard

governing Eighth Amendment claim arising from imprisonment of plaintiff past his release date).

Here, Plaintiff does not satisfy the first requirement of alleging facts plausibly suggesting

that Defendants Goord, Annucci and/or Dennison *had knowledge of the prisoner's problem and*

*thus of the risk that unwarranted punishment was being, or would be, inflicted*.  Presumably,

Plaintiff is alleging (in his Complaint) that he sent Defendants Goord, Annucci and/or Dennison

written communications regarding the issues complained of in this action.  (*See* Dkt. No. 1, ¶¶

30-32 [Plf.'s Compl.].)  If so, he has failed to allege such facts as (1) what form those written

communications took (e.g., letters, grievances, appeals from grievance decisions, etc.), (2) when

he sent those written communications, (3) whether the written communications were addressed

to one or more of these three Defendants, or whether merely a copy of the written

_____

(N.D.N.Y. Aug. 7, 2006) (Scullin, J.).

communications was sent to one or more of these three Defendants, (4) whether he received any written communications in response to his written communications indicating that his written communications had been read, and most importantly (5) what, precisely, his written communications said.  (*See* Dkt. No. 1, ¶¶ 26-28, 30-32 [Plf.'s Compl.].)

It is true that the Supreme Court's decision in *Swierkiewicz v. Sorema N.A.* affirms the point of law that a plaintiff need not plead all the elements of a prima facie case in order to state an actionable claim.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).  However, in addition, that decision–and other Supreme Court decisions–affirm the point of law that a plaintiff must give a defendant *fair notice* of the plaintiff's claim so that the defendant may shape a comprehensive defense.[30]  In addition, as explained above in Part III of this Report-Recommendation, the Supreme Court's more-recent decision of *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968-69 (2007) clarifies that a plaintiff must allege facts *plausibly suggesting* that actionable conduct has occurred.  Plaintiff has not done so here.

The closest Plaintiff comes to providing this factual allegation is when he attaches to his Complaint his letter of August 23, 2004, addressed to Diane Holford, and copied to Defendants Goord and Annucci.  (Dkt. No. 1, Ex. I [Plf.'s Compl., attaching letter].)[31]  The first problem with

---

[30]      *Swierkiewicz v. Sorema N.A.*, 534 U.S. at 507 ("Rule 8(a)'s express language . . . requires . . . that the complaint 'give fair notice of what the plaintiff's claim is and the grounds upon which it rests.'") [citing *Conley v. Gibson*, 335 U.S. 41 (1957)]; *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (the statement required by Fed. R. Civ. P. 8[a][2] must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").

[31]      I note that none of the other exhibits to Plaintiff's Complaint indicate that they were either addressed to or copied to Defendants Goord, Annucci, or Dennison.  (*See* Dkt. No. 1, Exs. A-J [Plf.'s Compl.].)

this letter is that it was not copied to Defendant Dennison.  The second problem with the letter is that it is not accompanied by any factual allegation plausibly suggesting that either Defendant Goord or Annucci ever *read* the letter.

Even if Plaintiff had satisfied the first requirement described above, he has not satisfied the second requirement described above, namely, the requirement of alleging facts plausibly suggesting that Defendants Goord, Annucci and/or Dennison *either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight*.  (*See* Dkt. No. 1, ¶¶ 26-28, 30-32 [Plf.'s Compl.].)  To the contrary, according to Plaintiff's own factual allegations, Plaintiff's letter of August 23, 2004, to Defendant Holford (which was copied to Defendants Goord and Annucci) was followed–a mere *eight days* later–by a successful effort by Defendant Holford to correct the miscalculation of which Plaintiff complained.  (*Id*. at ¶¶ 25-26 & Exs. I, J.)[32]  I would have trouble concluding that such a prompt (and effective) investigation and response constitutes even negligence, much less deliberate indifference to Plaintiff's plight.

Succinctly stated, Plaintiff alleges that the actions of Defendant Holford, Annucci, and Goord constituted deliberate indifference to Plaintiff's plight.  I am certainly sympathetic with Plaintiff's plight.  However, even liberally construed, his Complaint alleges no facts plausibly suggesting that Defendants were deliberately indifferent to his plight.  For Defendants to have been *deliberately indifferent* to Plaintiff's plight, Defendants would have had to be more than

---

[32]     I repeat that it also appears to have been judicially determined in Plaintiff's Article 78 proceeding that the referenced miscalculation has been corrected *in its entirety*.

26

merely *negligent* in their response to Plaintiff's complaints.[33]  Defendant would have had to be *criminally reckless* in their response to Plaintiff's complaints.[34]  Plaintiff has alleged no such facts.  (*See* Dkt. No. 1, ¶¶ 26, 28, 30-32 [Plf.'s Compl.].)

District courts in the Second Circuit have dismissed similar Eighth Amendment sentence-miscalculation claims asserted by prisoners for failing to allege facts plausibly suggesting that the defendants were deliberately indifferent to the prisoners' plight.  *See Shultz v. Egan*, 02-CV-0141, Report-Recommendation, at 5 (N.D.N.Y. filed Jan. 30, 2003) (Homer, M.J.) (recommending that Court grant defendants' Rule 12[b][6] motion to dismiss prisoner's Eighth Amendment claim

---

[33]     *See, e.g., Farmer v. Brennan,* 511 U.S. 825, 835 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *cf. Daniels v. Williams*, 474 U.S. 327, 331-33 (1986) (stating that "injuries inflicted by governmental negligence are not addressed by the United States Constitution" and rejecting § 1983 claim based on alleged due process violation under Fourteenth Amendment); *Hudson v. Palmer*, 486 U.S. 517, 531 (1984) ("[T]he Due Process Clause of the Fourteenth Amendment is not violated when a state employee negligently deprives an individual of property . . . ."); *Franks v. Delaware*, 438 U.S. 154, 171 (1978) ("Allegations of negligence or innocent mistake are insufficient [to state a claim under the Fourth Amendment].").

[34]     *See, e.g., Farmer,* 511 U.S. at 827 ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness . . . .") [citation omitted]; *cf. Franks*, 438 U.S. at 171 ("There must be allegations of deliberate falsehood or of reckless disregard for the truth [to state a claim under the Fourth Amendment].."); *Madiwale v. Savaiko*, 117 F.3d 1321, 1326-27 (11th Cir. 1997) ("[A] warrant affidavit violates the Fourth Amendment when it contains omissions made intentionally or with a reckless disregard for the accuracy of the affidavit.") [internal quotation marks and citation omitted].

regarding sentence miscalculation because claim alleged that defendants continued to mistakenly calculate that sentence after being notified of error, but alleged no facts plausibly suggesting that defendants *deliberately* miscalculated that sentence), *adopted*, Decision and Order (N.D.N.Y. filed March 3, 2003) (Kahn, J.), *aff'd in part and vacated in part on other grounds*, 103 Fed. App'x 437, 440 (2d Cir. 2004) (summary order); *Olushina v. Gonzalez*, 06-CV-4030, 2006 U.S. Dist. LEXIS 74003, at *8-9 (E.D.N.Y. Oct. 11, 2006) (*sua sponte* dismissing prisoner's Eighth Amendment claim regarding sentence miscalculation because claim alleged no facts establishing that the Bureau of Prisons acted with deliberate indifference to prisoner's plight).

District courts in the Second Circuit have also dismissed similar Eighth Amendment sentence-miscalculation claims asserted by prisoners where the undisputed record facts of the case (on a motion for summary judgment) were analogous to the factual allegations of Plaintiff's Complaint in this action, which are assumed to be true for purposes of Defendants' motion to dismiss. *See Peterson v. Tomaselli*, 469 F. Supp.2d 146, 163 (S.D.N.Y. 2007) (granting defendants' motion for summary judgment as to prisoner's Eighth Amendment claim regarding sentence miscalculation because "[a]t most, plaintiff has raised a genuine issue as to whether [defendant] was negligent in submitting [an] affirmation with misleading sentencing information, but negligent conduct is insufficient as a matter of law to establish a constitutional violation") [citation omitted]; *Wright v. Kane*, 94-CV-3836, 1997 WL 746457, at *5, 14 (S.D.N.Y. Dec. 2, 1997) (granting defendants' motion for summary judgment as to prisoner's Eighth Amendment claim regarding sentence miscalculation because deliberate indifference was not present in that the Department of Corrections "immediately released Plaintiff after his status was changed"); *McCants v. Jones*, 98-CV-6337, 1999 WL 804009, at *3 (W.D.N.Y. Sept. 30, 1999) (granting

28

defendants' motion for summary judgment as to prisoner's Eighth Amendment claim regarding sentence miscalculation because "[t]he fact that the sources and documents [defendant] consulted [in calculating plaintiff's jail credits] did not reveal [plaintiff's] Oswego County incarceration does not support a finding of deliberate indifference on the part of [defendant]. Even if the record somehow raised an issue of fact as to negligence on the part of [defendant], such conduct is insufficient to establish a constitutional violation") [citation omitted].[35]

Finally, I note that the Court has the authority (and duty) to *sua sponte* address the pleading sufficiency of Plaintiff's claims under the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . . is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . . seeks monetary relief against a defendant who is immune from such relief."); 28 U.S.C. § 1915A(b) ("On review, the court shall . . . dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . .").

For these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's constitutional claims arising from the modification of his parole eligibility date on August 31, 2004 (which had been miscalculated on February 12, 2003), for failure to allege facts plausibly

---

[35]   *See also Moore v. Tartler*, 986 F.2d 682, 686-87 & n.6 (3d Cir. 1993) (affirming grant of summary judgment to defendants with regard to prisoner's Eighth Amendment claim of sentence miscalculation based on prisoner's failure to show deliberate indifference to prisoner's plight); *Lundblade v. Franzen*, 631 F. Supp. 214, 218-20 (N.D. Ill. 1986) (granting summary judgment to defendants with regard to prisoner's Eighth Amendment claim of sentence miscalculation based on prisoner's failure to show deliberate indifference to prisoner's plight).

suggesting that any Defendant was deliberately indifferent to Plaintiff's plight.

### 3. Whether Plaintiff Has Failed to Allege Facts Plausibly Suggesting that Defendants Goord, Annucci and Dennison Were Personally Involved in the Constitutional Violations Alleged

Defendants also argue that Plaintiff has not alleged facts plausibly suggesting that Defendants Goord, Annucci and Dennison were personally involved in the constitutional violations alleged.   (Dkt. No. 42, Part 3, at 9-11 [Ex. A to Mans Affirm., attaching Defs.' Memo. of Law]; Dkt. No. 42, Part 4, at 4-5 [Ex. B to Mans Affirm., attaching Defs.' Reply Memo. of Law].)

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 [2d Cir. 1991]).[36]  In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant.[37]  If the defendant is a supervisory official, such as a DOCS Commissioner or Deputy Commissioner, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that unlawful conduct.[38]  In other words, supervisory officials may not be held liable merely because

---

[36]     *Accord*, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978); *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987).

[37]     *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

[38]     *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

they held a position of authority.[39]   Rather, supervisory personnel may be considered "personally

involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation

after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or

custom under which the violation occurred, (4) had been grossly negligent in managing

subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of

inmates by failing to act on information indicating that the violation was occurring.[40]

Here, Plaintiff's factual allegations against Defendants Goord, Annucci and Dennison

(each of whom he alleges was a supervisory official during the time in question) are contained in

Paragraphs 30 through 32 of his Complaint.  (*See* Dkt. No. 1 ¶¶ 4, 8, 9, 30-32 [Plf.'s Compl.].)

More specifically, Plaintiff alleges as follows:

> 30.  That Defendant Comissioner Goord of NYSDOCS and
> Commissioner Dennison of [the] Division of Parole[] knew about the
> injuries and subsequent determination that plaintiff's sentences were
> miscalculated and [that he] is being held beyond his release date, and
> now his potential parole eligibility date; despite knowing such and
> [knowing of] plaintiff['s] repeated request that correction actions be
> taken from [sic] [the] acts complained of, [they] continue to cause the
> deprivation of plaintiff's rights by refusing to remedy the wrong.

---

[39]     *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

[40]     *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright*,
21 F.3d at 501 (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986)
(setting forth four prongs).

31.  The Defendant[s] . . . Dennison and Annucci were contacted with respect to the miscalculation in [Plaintiff's] sentences, [the] subsequent determination involving same and [involving] jail time credit[s], and had deliberately ignored the opportunity to confirm the seriousness of plaintiff's excessive & illegal confinement.

32.  That Defendant[] . . . DOCS Deputy Commissioner Annucci[] not only refuse[s] to remedy the wrong upon learning of it, but willfully, knowingly and wrongfully continue[s] to misrepresent the facts in the plaintiff's sentences[.]  [P]rior credit and jail-time credit were properly calculated and credited in spite of said determination and facts that it wasn't [sic] – which resulted in plaintiff's continued and unlawful[] confinement, and further harming the plaintiff, causing him great mental distress and violating his Statutory, Civil and Constitution[al] rights under the United States and New York State Constitution.

(*Id*. at 30-32.)

As is clear from these allegations, Plaintiff does not allege even conclusorily that Defendants Goord, Annucci or Dennison *directly participated* in any intentional or criminally reckless miscalculation of Plaintiff's sentence.  Nor does Plaintiff allege even conclusorily that Defendants Goord, Annucci or Dennison created, or allowed to continue, a *policy or custom* under which the alleged violation occurred.  Nor does Plaintiff allege any facts plausibly suggesting that Defendants Goord, Annucci or Dennison had been *grossly negligent* in managing the particular subordinate(s) who allegedly caused the violation–whomever the subordinate(s) may have been.[41]  Rather, Plaintiff's theory of personal involvement hinges on the second and

---

[41]     I note that Plaintiff alleges *conclusorily* that "as a result of [DOCS'] failure to supervise and adequately train its employees for proper administration of computing terms of imprisonment and time credits based on time served, when there was a clear pattern of incidents, . . . plaintiff . . . [was] detained beyond his maximum expiration and now potential parole eligibility dates . . . ."  (Dkt. No. 1, ¶ 29 [Plf.'s Compl.].)  This vague and generalized allegation is nothing but a thinly veiled allegation that Defendants Goord, Annucci and Dennison must have –due to their *supervisory* positions–been responsible for the sentence miscalculation(s) committed by their (unidentified) subordinate(s).  Plaintiff does not even bother to allege (1) what other "incidents" to which he is referring, (2) how those "incidents" were similar to the

fifth types of personal involvement described above–a failure to remedy that violation after learning of it through a report or appeal, and/or an exhibition of deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.

The problem is he has alleged no facts plausibly suggesting that Defendants Goord, Annucci or Dennison actually *learned of any constitutional violation* through report or appeal. Similarly, Plaintiff has alleged no facts plausibly suggesting that Defendants Goord, Annucci or Dennison ever *acquired information indicating that the violations alleged were occurring.* As stated above in Part IV.B.2. of this Report-Recommendation, presumably, Plaintiff is alleging that he sent these individuals written communications regarding the issues complained of in this action. If so, he has failed to allege such facts as (1) what form those written communications took (e.g., letters, grievances, appeals from grievance decisions, etc.), (2) when he sent those written communications, (3) whether the written communications were addressed to one or more of these three Defendants, or whether merely a copy of the written communications was sent to one or more of these three Defendants, (4) whether he received any written communications in response to his written communications indicating that his written communication had been read, and most importantly (5) what, precisely, his written communications said.

Again, the closest Plaintiff comes to providing these factual allegations is when he attaches to his Complaint his letter of August 23, 2004, addressed to Diane Holford, and copied

---

miscalculation to which he had been subjected, (3) why any of these three supervisory Defendants would have known of such other "incidents," or (4) how any of these three supervisory Defendants "failed" with regard to the training and/or supervision of their subordinates.

to Defendants Goord and Annucci.  (Dkt. No. 1, Ex. I [Plf.'s Compl., attaching letter].)[42]  As

explained above in Part IV.B.2. of this Report-Recommendation, the first problem with this letter

is that it was not copied to Defendant Dennison.  The second problem with the letter is that it is

not accompanied by any factual allegation plausibly suggesting that either Defendant Goord or

Annucci ever read the letter.  The third problem with the letter is that it did not give Defendants

Goord and Annucci notice that DOCS was in any way improperly responding to Plaintiff's

allegation of one or more miscalculations in his sentence.  (To the contrary, the letter expressly

acknowledged that one of Goord and Annucci's subordinates–on whom Defendants Goord and

Annucci were entitled to rely–would be "getting back in touch with [Plaintiff]" concerning his

allegation that his sentence had been miscalculated.)

    This last point bears emphasis and elaboration, in the event that Plaintiff, during an

objection to this Report-Recommendation, comes forth with one or more letters to, and/or from,

one or more of these three Defendants.  Defendant Goord was, during the time in question,

entitled to (1) refer letters of complaint to subordinates, such as Defendant Annucci, and (2) rely

on those subordinates to conduct an appropriate investigation and response.[43]  Moreover, a DOCS

_____

      [42]      I note that none of the other exhibits to Plaintiff's Complaint indicate that they
were either addressed to or copied to Defendants Goord, Annucci, or Dennison.  (*See* Dkt. No. 1,
Exs. A-J [Plf.'s Compl.].)

      [43]      *Brown v. Goord,* 04-CV-0785, 2007 WL 607396, at *6 (N.D.N.Y. Feb. 20, 2007)
(McAvoy, J., adopting Report-Recommendation by Lowe, M.J., on *de novo* review) [citations
omitted]; *see also Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (DOCS Commissioner was
not personally involved in alleged constitutional violation where he forwarded plaintiff's letter of
complaint to a staff member for decision, and he responded to plaintiff's letter inquiring as to
status of matter); *Swindell v. Supple*, 02-CV-3182, 2005 WL 267725, at *10 (S.D.N.Y. Feb. 3,
2005) ("[A]ny referral by Goord of letters received from [plaintiff] to a representative who, in
turn, responded, without more, does not establish personal involvement."); *Garvin v. Goord*, 212
F. Supp.2d 123, 126 (W.D.N.Y. (2002) ("[W]here a commissioner's involvement in a prisoner's

supervisor's adoption of a recommendation by a subordinate investigating officer does not by itself demonstrate that he failed to remedy known misconduct.[44]  Finally, as stated above in Part IV.B.2. of this Report-Recommendation, for Defendant Annucci to have been *deliberately indifferent* to Plaintiff's allegations, Defendant Annucci would have had to be not merely negligent but *criminally reckless* in his response to Plaintiff's allegations.[45]  I see here no factual allegations plausibly suggesting any such criminal recklessness.

For these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's claims against Defendants Goord, Annucci and Dennison because Plaintiff has not alleged facts plausibly suggesting that these three Defendants were personally involved in the constitutional violations alleged.

> **4.     Whether Plaintiff's Claim that He Was Exposed to an Additional Felony Conviction While Allegedly Incarcerated Beyond His Correct Release Date Fails to State a Claim for Which Relief May Be Granted**

Finally, among the various constitutional claims that Plaintiff asserts is a claim that, because of his incarceration beyond his correct release date of June 22, 1988, he was exposed (during his prolonged incarceration) to an additional felony conviction (on February 27, 1990, in County Court for Greene County) of promoting prison contraband, criminally possessing a

---

complaint is limited to forwarding of prisoner correspondence to appropriate staff, the commissioner has insufficient personal involvement to sustain a § 1983 cause of action.").

[44]     *Shabazz v. Lee*, 03-CV1520, 2007 WL 119429, at *7, n.4 (N.D.N.Y. Jan. 10, 2007) (Homer, M.J.) [citations omitted]; *see also Thompson v. New York*, 99-CV-9875, 2001 WL 636432, at *7 (S.D.N.Y. Mar. 15, 2001) ("The superintendent's adoption of the recommendation by the investigating officer cannot by itself demonstrate that he failed to remedy known misconduct.").

[45]     *See, supra,* notes 30-31 of this Report-Recommendation.

weapon, and menacing another person, resulting in an additional sentence of incarceration.  (Dkt. No. 1, ¶¶ 19, 21, 29, 34 & Ex. B [Plf.'s Compl., attaching Sentence and Commitment].)

Defendants argue that such a claim fails as a matter of law for two independent reasons: (1) there is no causal relationship between any actions by Defendants and any additional sentence of incarceration experienced by Plaintiff because the cause of any such additional sentence was the intervening, superseding act of Plaintiff's choosing to promote contraband in prison, possess a weapon in prison, and menace another person in prison; and (2) Plaintiff's claim for money damages arising from his (allegedly) wrongful imprisonment is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), since his success on the claim would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence.  (Dkt. No. 42, Part 3, at 7-9 [Ex. A to Mans Affirm., attaching Defs.' Memo. of Law]; Dkt. No. 42, Part 4, at 3-4 [Ex. B to Mans Affirm., attaching Defs.' Reply Memo. of Law].)

I would accept this argument even if I were to subject it to the sort of detailed scrutiny reserved for contested dispositive motions.  There is no factual allegation in Plaintiff's Complaint plausibly suggesting that his felony conviction was ever invalidated.  The alleged acknowledgment by Defendant Holford (a correctional employee) in August of 2004 that there had been a miscalculation of Plaintiff's sentence in 1987, in no way constitutes an invalidation of Plaintiff's felony conviction in County Court for the County of Greene on February 27, 1990. Only a court ruling could overturn that felony conviction in County Court.  Plaintiff has alleged no facts plausibly suggesting the issuance of such a court ruling.  (Neither the 2005 ruling by Justice Ceresia, nor the 2006 ruling by the Third Department–discussed above in Part IV.B.2. of this Report-Recommendation–can be read as invalidating Plaintiff's felony conviction in 1990.)

Furthermore, Defendants are correct that–to the extent that Plaintiff is attempting to assert a constitutional claim arising from his criminal conviction on February 27, 1990–that claim fails due to the causation problem identified by Defendants.  To the best of my knowledge, there is no authority standing for the proposition that a prisoner may (with impunity) commit a felony in prison simply because, at the time, he was being erroneously kept in prison past his maximum release date.  Simply stated, the cause of Plaintiff's felony conviction on February 27, 1990, was Plaintiff's criminal acts, not any error in the calculation of Plaintiff's maximum release date.

For these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's constitutional claim arising from his criminal conviction on February 27, 1990, for failure to state a claim upon which relief may be granted.

### 5.   Whether Any Claims Remain

For all of these reasons, I recommend that the Court grant Defendants' motion to dismiss.

It bears noting that, if the Court adopts this Report-Recommendation in its entirety, no claims would remain in this action.  All claims arising from Plaintiff's first set of factual allegations (described above in Part II of this Report-Recommendation) would be dismissed as barred by the applicable statute of limitations.  All claims arising from his second set of factual allegations (described above in Part II of this Report-Recommendation) would be dismissed because Plaintiff has failed to allege facts plausibly suggesting that any Defendant was deliberately indifferent to Plaintiff's plight.  Finally, various of Plaintiff's claims would be dismissed on one or both of two alternative grounds (i.e., a lack of personal involvement and/or a lack of causal relationship).

37

**ACCORDINGLY**, for the reasons stated above, it is

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 42) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs*., 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: March 14, 2008
      Syracuse, New York

George H. Lowe
United States Magistrate Judge